may please the court. Mr. Stahlberg, there are three main points I would like to address. First, does the Torture Commission have the right to define a tortured confession? Second, what evidence can the Torture Commission look at when weighing the torture claim? And then third, if this court remands Mr. Muhammad's case, should Mr. Milan be removed from the case? I would like to start out by noting that the circuit court held that the Torture Commission referral was not an administrative decision as defined under the Illinois Administrative Review Act, and therefore no deference was accorded to the Torture Commission's determination. This was clearly wrong by both the statute and this court's Johnson decision, which came out just after the appeal was filed. Mr. Milan's brief only gave a glancing look at the Johnson decision and did not address that part of the court's decision in which the judge found the Administrative Review Act was not controlling. I have taken that as an acknowledgement by Mr. Milan that he is not contesting that the court was incorrect in that matter. But Mr. Milan has doubled down on his position that the Torture Commission cannot define what a tortured confession is, and that the Torture Commission could not look at any other misconduct by the police and prosecutors in weighing the evidence and determining the referral of Mr. Muhammad's claim. Judge Flood determined that the Torture Commission's definition of tortured confession was incorrect, again after finding that the word confession was not in the statute, it was not defined in the statute, and therefore he accorded it no deferential treatment or didn't give it any thought at all. Of course, confession was defined in the code, but Judge Flood apparently didn't realize that, and he turned to old criminal law to say that the definition of the confession that was concocted for Mr. Muhammad was not a real confession because it didn't accord to criminal law, old criminal law. Isn't the terminology different today? I mean confession, but the court cases really talk about statements. Correct. It's evolved. You addressed that. Yeah, I addressed that in the briefs. I know you did. It doesn't seem that that's being accepted by, what's your response to the other side? They're going back to the way it was 60 years ago rather than looking at what we are dealing with today. Yeah, it's an interesting position that Mr. Milan took on this because he argued that the definition that was used by the Torture Commission was so outside the statute, the torture statute, that going back to the definition of confession from 20, 30 years ago was the way to go, and he justified that by saying that the legislator intended to limit the Torture Commission only to those victims who fell under the old act because they used the word confession and didn't define it any further than just, they didn't define it correctly is what they said. I contend that Mr. Milan's argument is absurd. The Turk Act acted within its authority in defining a tortured confession, and the court need go no further than to look at the actual plain text of the code, the definition that was given for a tortured confession, and the legislative intent, which was to provide an avenue for people who had no other avenue because they were incarcerated based on tortured confessions. The definition promulgated by the Torture Commission, I think, fits squarely in the scope of the statute in that it recognizes the full range of ways in which defendants' words or actions may amount to a confession, and it recognizes that a defendant may not even have made the confession, may dispute having made the confession, and it is in the administrative rules, the tortured confession, the definition, and the Supreme Court has said in Bonuti that we should accord administrative rules the full force and effect of law, and finally, I would also say this is the civil proceeding, and the old criminal definition of confessions really has no place in the tortured confession, so under the TURC Act. Ms. Berman, let me pick up on that point. You make the argument that because proceedings under the TURC Act are civil in nature, not criminal, and that the special prosecutor has not cited any authority that the legislature intended for the definition of a term in the criminal context to apply to a civil proceeding. Let me turn that around and ask you, are you aware of any cases that hold that a term used in a criminal statute can have a different meaning when used in a civil statute? Well, I would answer that by saying this is under the Administrative Review Act as well, and TURC is allowed to define its own terms, and they have defined the term, not in the context of a criminal action, but in the context of the tortured commission, which is a civil action in nature. On that point, you had cited Section 40-55A in your brief for the proposition that the legislature specifically empowered the commission as an administrative rulemaking authority, and I looked at that, but I didn't see anything in that section that said anything about rulemaking, so did I misread something, or is that an incorrect citation? Is there some specific grant of authority to the commission to make rules? I believe that comes under the Administrative Review Act itself, giving them the authority to make the rules, and I'm not sure if I cited it wrong, and I apologize if I did. I can look that up. You rely on the Costa case, our Supreme Court's decision in Costa. The special prosecutor points out that the same day that the Supreme Court decided Costa, they decided two other cases. I think at least one had to do with disclosure obligations, and the special prosecutor says that in those cases, the court specifically stated that for other purposes besides Costa, that we maintain a distinction between confessions and statements, and that the legislature understands that distinction because in other contexts, they have used the word statement or confession in the same statute. What's your response to that? Your Honor, I think Costa was the beginning of the evolution of the confession as it's used in the criminal context today, and using it more as a broad statement. It doesn't have to have all the terms of the prima facie case of the confession of what the charge was, and so I would also say Costa starts that evolution on the criminal side, but I think the Costa case was decided the same year as the Torture Commission was enacted, and if they were looking at any definition, I think they were actually looking at the definition of what would meet their own needs for the statute, but if they were looking at a definition, it would be the evolution of the confession. If we accept your position that a confession is more than what it's traditionally and historically been defined as, what does the legislature do with that in the context of future legislation? Do they need to say any confession, but we don't mean a statement. We need a confession that we admit to every element of the crime. I mean, is that the kind of specificity that would be required? I think that would make for very difficult legislation, and I think we have to look at what's going on at the time in the courts, but we also have to look at what the purpose of the statute is that's being enacted. In this case, it's a case that's looking at people who were forced into confessing based on torture, and I think for the cases, the criminal cases, they're looking at a different perspective of confession. They're looking at, even though it has grown to be any statement, and the cases have been evolving to include all of that. I'm not sure if I'm actually answering what you're asking, but I think it would be very difficult to ask the legislature to define all of that in the course of their legislation. Thank you. And also, you argued in your brief, Ms. Gorman, that the distinction between confessions and admissions are pretty much preserved for other purposes, in that you're arguing that here, and looking at Loeffler specifically, that the court's actual holding was that the admission could also be, or should also be, subject to suppression and the voluntary analysis. Is that? That's correct, yeah. Okay, thank you. Thank you. So, is your argument then that because the purpose of TURC is to determine whether some statement, admission, confession, whether it was voluntary, you know, presumably if it was obtained by torture, it wasn't voluntary. So, is it your argument that then, therefore, we should follow the Costa line of cases, but that in all other respects that the distinction between a confession and admission can be maintained? I'm saying that we should follow the definition that TURC advanced, and that they had the right to advance their own definition under the Administrative Review Act. But is that because the word tortured confession and the act is ambiguous? I don't believe it's ambiguous. And even Mr. Milan doesn't state it's ambiguous. The definition is very clear. It includes any incriminating statement, vocalization, or gesture alleged by the police or prosecutors to have been made. So, I think that's very clear. And if we, and it's in the code. And so, all we have to do is look at the code and say that this is, that this is the right of the Torture Commission to promulgate that definition. That gets to my question, does the Torture Commission have the right to define its own terms under the code? And I suggest that the Administrative Review Law is clear that they do have that right under the code because they gave them, they defined it there. And the statement that was fabricated by the tortured detectives in Mr. Muhammad's case was squarely in the definition promulgated by the Torture Commission and was used repeatedly to convict Mr. Muhammad at the trial. So, your position is that, Ms. Gorman, that it doesn't matter whether it's ambiguous, that they had the right to define the term. Well, I'm saying I don't think it was ambiguous. I know, but it doesn't matter. It doesn't because they did have the right. Okay. If I could get on to my second point, my second point is the answer, what is the answer to the question of what other evidence can the Torture Commission look at in considering in a TURC referral? In section 50 of the TURC statute says that the court may review proof by affidavits, depositions, oral testimony, or other evidence. And then again, if we look at the code, section 3500.386 looks at the factors that the Torture Commission can look at in making a decision. And one of those, there's many sections that they say that, many ideas that they can look at. I'm focusing on the last one, number nine, whether the strength of the evidence against the claimant in a particular case could bear on a possible motive for having coerced, or in this case, fabricated the confession. And I suggest again, that the goal of TURC is to look for credible evidence of torture. Even the prosecutor cites to that part of the statute several times. What they look at is what is key. And in determining credibility on the part of the torture victim and on the part of the state, the Torture Commission has looked at the totality of the evidence. And weighing that evidence, the case looked not only at the history of detectives and the overwhelming, in this case, the overwhelming evidence of misconduct, but also the testifying officers perjury, the Brady violations. They looked at all of those together to determine whether or not Mr. Muhammad was entitled to a hearing. And looking at all of that evidence, the totality of that evidence together, they said, yes, he is entitled to go to the next step. And I would just say that the Torture Commission was so concerned about what it saw from both the Chicago Police and the Cook County State's Attorney's Office, that it actually asked in its referral for a judicial examination of their conduct. In Mr. Muhammad's case, the evidence of both the fabricated confession and the misconduct by the torture detectives is really key. And that goes to the credibility of Mr. Muhammad. And that's the reason why the Torture Commission looked at it. In this case, in addition to the torture, we have the detectives torturing and threatening witnesses. We have them hiding exculpatory evidence in lineups. And something that we learned even after the filing of this case is that they hid an important key eyewitness who was not mentioned in any of the documents. Surely the Torture Commission and the courts should be allowed to look at all of this and making its determination that the defendant's claim of torture is entitled to relief. My last point is bringing me back to Mr. Milan. The attorneys that reported to Special Prosecutor Milan denied Muhammad a fair trial. And the Turk referral specifically pointed to their conduct in asking for a judicial review of both the Chicago Police Department and the Cook County State's Office. This will be an investigation into the Cook County State's Attorney's Office at the very time Mr. Milan was head of felony review and supervisor of the trial lawyers, trial attorneys. We were aware of the facts. They're spelled out in the briefs and argued in the briefs with regard to Mr. Milan. Is it your request, as I understand it, that the motion is that he had a conflict of interest? And if he had a conflict of interest, then he should never have participated at all in this case. And therefore, anything that he participated in should be gone. Because whatever it was, he was taking it. He shouldn't be there because of the conflicts that you wrote about. So I'm trying to find out what is the relief is it simply to remove him now? Or is it to go back and say, look, we got to start over. I mean, you want a reversal, I understand, and the other issues. But not only reversal, I mean, anything he did is thrown out. Because he had a duty under the rules of professional conduct and you have an affidavit, so forth. You know, there's arguments about what the rules provide. But he had an No, I'm not saying it is. But still, if he had these conflicts, and you asked about it, and as I understand in the record, there was no response is what the briefs say. But the reason that the Cook County State's Attorney went to Mr. Milan in the first place is because everybody there, everybody was tainted. And then from what you're saying is, they picked a person who had he still been employed, would have been tainted. And the fact that he's not employed, he's still tainted. So from the get go, here's a person that should never have been your position, I believe. And that's what I'm asking. Is it your position that he should never have been appointed? And if we do that, do we go back in time? I mean, should he have charged the Cook County State's Attorney for all the years that he worked on this case under a situation where you make some serious accusations with regard to his past conduct and his conduct in this case? I you know, I don't when when you say do we go back in time? I don't think that's what I'm asking for. Because going back in time is where we're going to be going if we get remanded. Nothing has happened in this case. So I'm just asking for the case to to go back and start with a new prosecutor who was not doesn't have that same paint. So but wouldn't it start with an evidentiary hearing, though, before a judge? For which for the issue of Mr. Milan? No, the the entire case would go back and start there. If Mr. Regardless of what happened, what happens with Mr. Milan, if we weren't, I'm not talking about that issue right now. If we were to reverse on your first issue, it goes back in the trial court would then go forward with the hearing. Correct? Correct. And that's, that's really well, and let's just keep that other issue aside for a second session. Okay, like an issue. That's what you're asking for. Correct? Correct. Okay, now this is Hyman is talking about something different. So I'll let you go ahead just as I'm going to continue. I mean, what I'm asking is something different. With regard to conflicts like this, considering the allegations you made with regard to the conflict, I mean, it's a serious matter. And what's appropriate, which is a whole different question. I understand. And I, they're separate tracks. But that but my, my question, so you're just saying, as long as you went in the first matter, first two issues, then with regard to the issue on Milan, as long as a new special prosecutor is appointed, you're satisfied? Correct. Okay. Right. And you're not asking to start anything all over back to the very beginning. No, no. Yes. Okay. Don't have enough for that beginning. Yes. Well, and just just to be clear on this. I think the point my colleague was trying to make is are you asking to set the clock back to the time when the commission made the referral? And as you indicated in your brief, the special prosecutor, after he was appointed, took several months to, or even longer, perhaps to review the case. And then, I guess, two years after referral, then file a motion to terminate the proceedings. So you're not asking the court to unwind that as well, are you? You're simply asking the court to, I guess, disqualify, determine that the trial court erred in not rescinding the appointment. And, and that would then take us back to the time when the hearing would have otherwise taken place before the trial court. That's correct. Okay. Well, let me ask you this, Ms. Gorman. You know, I read your affidavit, and I understand that your, your focus in your practice is federal civil rights work, and that you avert in your affidavit that you weren't aware of Mr. Milan's past role in the state's attorney's office. Your, your opponent argues that this is gamesmanship, that it's only when Mr. Milan moved to terminate the proceedings that you then sought to have him disqualified, or have his appointment rescinded. Did you think to ask anybody at the time he was appointed or do an internet search? I mean, here we are five years into, down the road, and we have all this work that's been done, and, and, and now we have this issue come up. So, so if I could ask you to respond to the special prosecutor's argument that this is prosecutor's job. Yes, I'd like, I'm glad to respond to that because I want to, you know, Mr. Milan did this job of kind of flipping the facts on this, but I'm the one that brought to Mr. Milan not knowing anything about his background, and I submit when the state's attorney's office recuses itself because it has a conflict, and the court appoints a new, a special prosecutor, it never dawned on me in a million years that that prosecutor would have the same conflict, and, and I don't know why Mr. Milan didn't mention it, and I don't know if the I didn't think it was my job to research who the court was appointing, or who the court said, and the state's attorney said was hearing these cases, but... You averted in your affidavit that this was a concern you had with respect to the judge who would be assigned to the case, which is whether that judge was formally employed by the Cook County State's Attorney's Office. Judge Byrne? No, when you, you averted in your affidavit that when you sought the appointment, you know, when the matter of who the, which judge the case would be assigned to, you had indicated that you, you were asked to specifically ask for a judge who was not formally an assistant state's attorney, so as to avoid any conflicts, and you made that request in your motion. That's what you averted in your affidavit, and I guess my question is, but you didn't have that same concern with respect to the, who the special prosecutor would be? It never dawned on me in a million years that the special prosecutor would be coming from that same office because of the nature of what the special prosecutor was doing, and so no, this was the person I was told by the state's attorney's office was hearing them, was hearing these when they, when they recused themselves, and to me, it's still mind-boggling that this is who, in fact, was appointed, but to get to your, to your issue about the gamesmanship, I submitted to Mr. Milan in March of 2020, just before the pandemic went into full force, a binder of materials with my investigation, and again, I knew nothing about him being in the, in the state's attorney's office. It had a whole section on the malfeasance of the state's attorney's office in Mr. Muhammad's case. That's when Mr. Milan decided to, to dismissal in the case, so he says he sought a dismissal, and I went to recuse him. It's kind of flipping the facts because the facts were, I found all this stuff. I gave it to him thinking he was independent, and he was going to review it, and he reviewed it and said, oh, these are my people that she's complaining about. I'm going to, I'm going to move to dismiss this case, so I think it's a, the gamesmanship was not on my part because I didn't know his received all this evidence of the malfeasance at his office at the time he was in charge of felony review, and instead of addressing that or saying, wait, I should step back because this is actually when I was head of felony review. Instead, he moved to dismiss the claim. Right, but let me just say that, if I may, Justice Taylor. Yes. Okay. Ms. Gorman, I think, I think we're focused on the wrong issue here. The issue is not whether or not he was previously a state's attorney. There are some people who were previously state's attorneys in the office, maybe even at that time, that could have been fine on this case. The problem is that Mr. Mylon was head of felony review. He directly supervised the state's attorneys that were involved in this incident. That's really the issue, not that he's just simply from the state's attorney's office, so it's just simply, I, to say that you don't was from the state's attorney's office, that's not even the issue. You certainly didn't know that he was directly involved in what was going on, and that's what we're dealing with here. It's a much bigger issue than what we're focusing on right now. I agree, and I think I got off target a little bit by just talking in general about the state's attorney's office. I did ask in my motion for a judge not to have a former state's attorney as judge because of the potential for bias, but as far as Mr. Mylon, I knew nothing about him. I certainly didn't know he was head of felony review at the very time my client was being tortured during felony review. Then he was also second in command in the office when Mr. McDermott was hired. Correct. I'm sure you were not aware of that. I was not. I'm sure you asked that question rather than being sure of it. Okay, thank you. Yes. Let me follow up on Detective McDermott. Is it your position, Ms. Gorman, that because the state's attorney's office was conflicted from serving as special prosecutor in a case on account of the fact that McDermott was alleged to have tortured your client, is it your position then that, by definition, Mr. Mylon is also actually conflicted? Mr. Mylon, I think, is conflicted because he was head of felony review when my client was tortured, and he was first assistant when Mr. McDermott was hired, so he was actually the supervisor of Mr. McDermott. I think those two together conflict him out. Do each of those individually conflict him out, or is it a cumulative effect of the two? I think each of those individually would conflict him out, but in this case, we have them both. I'd like to ask a question that's not really dealt with, but do you have any information with regard to Assistant Special State's Attorney Ellen Spelberg, who's also a former state's attorney, longtime employee of that office, who's also a special state's attorney in this matter? Are you just saying it's Mr. Mylon, or could it reach others involved in the special prosecutor's office? Mr. Spelberg, as I understand, just came into Mr. Mylon's office right around the time this appeal was being done. I think he just retired from the state's attorney's office. I do know Mr. Spelman was the attorney handling a lot of the appeals. I had a civil rights case, a wrongful conviction case, that was in the state's attorneys, was at 26th Street, and Mr. Spelberg handled that appeal. I don't know anything about him that would impact on his knowledge of torture or any of that. But the real issue, Ms. Gorman, is whether or not Mr. Spelberg knows anything. That was the same issue with Mr. Mylon. If you know something, you at least have to disclose it and then let people decide whether or not they're still comfortable. Isn't that the way it works? I think that's the way it's supposed to work. Well, yeah. Thank you for correcting me. That's the way it's supposed to work. I'm sorry. I don't mean to be correcting you. No, you're right. You're correct. Are there any other questions? I have none. Okay. Why don't you finish up and then you reserve five minutes. I think I can reserve the rest of my time and go right to my conclusion in my five minutes. Okay. Thank you very much. Thank you very much. Mr. Spelberg. Thank you, Your Honor. Again, Assistant Special States Attorney Alan Spelberg, representing the people of the state of Illinois. If permissible, let me begin where we left off regarding me. As Ms. Gorman said, I did retire from the Cook County State Attorney's Office after nearly 30 years of practice. I retired in May of 2021. I came on working with Special States Attorney Bob Mylon in his capacity to assist on some of the legal cases that he's been appointed to. I started working for him in April of 2022. But more importantly, on this particular case, I never had any involvement at any point in any time with this case whenever I was in the Cook County State Attorney's Office. And in fact, excuse me, when it came through the appeals division in 2000 and some, I was not the supervisor of the unit at the time. So I have never had any involvement on this case until Bob Mylon asked me to handle the appeal in this manner. But isn't it broader than that in that, as I understand it, the Cook County State Attorney's Office said that anyone involved in the office because of Mr. McDermott being there was, could not handle this matter. Therefore, you're not saying that you weren't at the office. You may not have, I don't know whether he had involvement with Mr. McDermott or not. I'm not asking, that's not the issue. The issue is whether you were at the office at the time that Mr. McDermott was with the office because that's what she was saying when she went to a special prosecutor. Am I correct? If your honor, you're correct in some portions and not correct in others. Correct. In terms of what you are correct, yes, I was working at the Cook County State Attorney's Office at the time that Mr. McDermott apparently was an investigator. I never knew him, never met him, did not know of him, never had any interaction. As an appellate lawyer, I didn't have any interaction with the investigators. But where you're incorrect, your honor, is what the Cook County State Attorney did when they decided to recuse themselves from this matter. From what the record reveals and from what Ms. Gorman has stated, is that after this matter was referred for judicial review by the Turp Commission, it was presented, Ms. Gorman went to the Cook County State Attorney's Office and they looked at it for a while from what she says and then they decided that they believed that they had a conflict because McDermott had worked for them previously and that there should be a special prosecutor appointed. That is a determination that the office itself was conflicted, not that the Kim Foxx in her capacity had decided that her office should not be involved in this matter. That's not a finding that everyone is conflicted. I would direct the judge's attention to Judge Beeble's initial ruling from way back when, excuse me, in 2002 or 2003, or maybe 2006, correct me. It's in the record, I just don't know the page at the moment, where he specifically said that the basis for the conflict was not that every attorney in the office was conflicted out, but it was because Dick Devine, as the Cook County State Attorney, was conflicted since he had previously represented John Burge in his private capacity. And that was the basis for the conflict of interest and that was the basis for the appointment of the initial special prosecutors in these matters, which was the Attorney General. Then when the Attorney General asked to be taken off the case and the state's attorney's office did not want it back, and so that's when Judge Beeble appointed Judge Noodleman as the special state's attorney. And then when Judge Noodleman retired in 2016 is when Bob Myland was appointed to be, to replace him as the special state's attorney on the Burge cases. So I give the history just to show that this isn't an instance of a conflict of interest simply because, or excuse me, a disabling conflict of interest simply because Mr. McDermott had worked for the Cook County State's Attorney's office. This is an instance of the Cook County State's Attorney deciding that in their mind it is something that they don't want to pursue on because they perceive it as a conflict, not that it's a disabling conflict under the statute. And that's the key question that has to be addressed here. And actually, let me take one step back if you don't mind. Going to your question earlier, how far does this issue go? I would point out that Mr. Myland's appointment on this case in 2018 is not before this court. If you look at the notice of appeal that the council filed, it does not address that ruling at all. The jurisdiction of the order appointing him as the special prosecutor is not present for this court. So the question of whether or not he was properly appointed isn't for this court to address. The question which has been presented is whether or not his appointment should have been rescinded, whether or not the motion to rescind that was filed by Ms. Gorman should have been granted. And the rule, the law is very clear. Mr. Spielberg, I don't mean to cut you off, but that's exactly what Ms. Gorman said. That's exactly what she's looking for. That she's in line with what you're saying. So I think you can probably move on. Your Honor, yes. She's asking for. Your Honor, I'm not agreeing that she's what the issue before the court is presented. We understand what the issues are before this court. If that's what you're trying to explain to us, we understand the issues before this court extremely well. All three of us do. Yes, Your Honor. I was responding to Justice Hyman's earlier question, how far does this go back for his initial appointment? That's all I was trying to do. You can move on. You can move on, please. Thank you. Thank you. The rule for rescinding a point for removing a special prosecutor is the same rules it is for removing an elected state's attorney. It's all under the statute, section 3-9008, which is exactly what Judge Reddick held below. And that the standards have to be as under the statute, whether or not there is an actual conflict of interest, which is defined by the statute as being interested in the matter as a private individual or as an actual party to the proceedings. That's the standard which has to guide this court. It's a standard which guided the court below in addressing the motion to rescind. That's the standard under which, the only standard under which Mr. Malin could be removed from this case. And Ms. Gorman doesn't meet that standard. The evidence doesn't support any of those factors that are necessary under the statute to remove an appointed special state's attorney. And Justice Walker, yes, I will move on now because that's the point that I think was important to be made. In terms of the proper construction of the TURC statute, whether or not Judge Flood properly dismissed the proceedings pursuant to the referral, it's very clear and simple question. It is a question of law as to what is the proper interpretation of the statutory language in the TURC Act. The TURC Act specifically says that it applies to situations where a person is tortured into giving a confession. However, the statute does not define tortured confession in any way. And so when Ms. Gorman says that the code provides or when the TURC Commission in their amicus brief refers to the code, they're not referring to the statute. They're referring to the administrative regulation that the TURC Commission itself adopted, which doesn't, which says that a tortured confession is any statement, verbalization, or gesture which could be used against it. That is not the same definition of confession that has long been recognized by the courts in Illinois. And Justice Hyman, when you said earlier the law has evolved, that it's changed, I actually have to disagree. Absolutely, we allow for confessions and statements and other types of gestures to be subject to a motion to suppress under Section 114-11. But that is not the same as saying that the definition of confession has changed. Instead, the definition of confession has remained consistent across the law for well over 100 years. It is applied today, every day in the courts, and particularly in the misdemeanor courts, because we know that the definition of confession is what controls disclosure in misdemeanor courts as opposed to statements. We're moving really fast, and I just have to ask you a quick question. So, it comes back to what I said earlier. You're agreeing that it doesn't matter whether it's ambiguous because you don't believe there's a definition there, correct? Is that what you're saying? That's not what I'm saying. What I'm saying is that the statute itself is clear. The plain language is the plain and ordinary meaning which has been applied to it by both the case law, by the dictionaries. That is what matters. It's the plain and ordinary definition of the word confession, because that's the standard which we have to use when engaging in statutory construction. The case law further says that while an administrative agency like the TURC can adapt its own administrative regulations and definitions, they are not entitled to any deference unless the statute itself is ambiguous. So, the statute itself, before you could even get to the TURC's regulation defining what a torture confession is, you have to first find that the term is ambiguous, and it's our position that you cannot. The term confession is plain and simple. It has its ordinary meaning, which is what has always been, which is an acknowledgment of guilt. Mr. Spilberg, let me interrupt you and ask you a question. So, you acknowledge that, at least with respect to a motion to suppress, that a confession can have a broader definition as our Supreme Court held in Costa, in line with Miranda. Ms. Gorman says that that is the case law that should control here because the portfolio of the commission is to determine whether confessions were obtained by torture and hence, you know, not voluntary. So, I think I understand her argument to be that because it's the same type of analysis as a motion to suppress, we should look to the meaning of confession as defined by the Supreme Court in Costa. What's your response to that? Your Honor, I believe that Ms. Gorman is wrong in that regard. This is a new statutory cause of action that the legislature created defining certain elements. One of the elements is a tortured confession. The defendant has to prove that there was a tortured confession. That's what the Christian case says. And so, yes, the goal is very similar to a motion to suppress in a civil case, in a criminal case, excuse me. It is very similar to a post-conviction claim of an involuntary statement, but it is not the same. This is a statutory claim of a factual torture, tortured confession, as opposed to a constitutional claim of a coerced statement. And so, the analysis is different. I mean, Christian lays that out and makes that clear. What is key in my view, in our view, is that the legislature was not creating a new form of relief for every form of coercion or involuntary statement. They were placing strict limits as to how it would go. Originally, it was limited solely to those defendants who were subject to the actions of John Birch and his minions. Then it was expanded to apply to anyone in Cook County who was subject to torture, which is extreme abuse of some kind, resulting in a confession, which is used to obtain the conviction. It doesn't say it has to be admitted against him. It doesn't say it has to be admitted against him. It says, following a referral, has to prove those elements of the offense. And if he can't prove those elements of the Turk claim, he's not entitled to relief under the Turk statute. So, it's possible that a defendant would be unable to satisfy his burden under the Turk statute, but could still satisfy his burden under a post-conviction involuntary statement. So, I understand your argument, then, is you want confession as narrowly construed as possible, and Ms. Gorman is asking it be broadly construed. I'm not asking for the word confession to be construed narrowly. I'm asking for the confession to be construed... That's the effect of your argument. The effect of your argument is to leave out many statements and admissions that may have been obtained through torture. Your Honor, yes, that is true. That's what you're saying. Your Honor, that is true, but it is our position that that's what the legislature intended. And as further proof... You said the legislature intended that the Torture Commission should not look at all torture, but only certain kind of torture. Is that it? No, Your Honor. What I'm saying is that the legislature may have intended, and the legislature intended to limit the availability of relief under this Act to only those individuals who were tortured into giving false confessions. That's their goal. How do you know that's their goal? I mean, on what basis? So, the presumption of that comes from the rules of statutory construction. We can look to the plain language of the statute. We can look to the case law defining the term confession that has always been in place. And then, also, significantly, the other statutes that the in situations where not only confession was obtained through use of coercion, but a statement or information. Those statutes demonstrate, without any doubt, that the legislature has the ability and the capacity and the desire, in some instances, to create a statute which is broader than simply confessions. This statute, however, the legislature purposely chose to limit it to the word unless the word confession is ambiguous, that has to be given its effect, its plain and meaning effect. Well, apparently, to me, I mean, from what I'm hearing in the argument, there is an ambiguous in that the two of you, at least, are seeing differently how you consider the word confession. Your definition of confession and Ms. Gorman's definition of confession are different. Am I wrong? Your Honor, yes. I believe that Ms. Gorman and I are defining the statutory term differently in the sense that I am looking to the case law, which is binding upon this court and the Turk, whereas Ms. Gorman is looking to the Turk's own administrative definition. I think she's looking at more than that. I think she's looking at the how the law has evolved and the whole idea of torture, which is a serious, as you know, extremely serious situation here in Cook County that's been going on for years and these cases keep arising. And that, as I understand what you're saying, the legislature wanted to pick and choose which torture cases that this commission would look at. And if it wasn't a confession, as you say, then it's outside the scope of their authority. That's what I hear you say. Your Honor, what I'm saying is that the statute has to be construed according to the plain language under the rules of statutory construction that it has to accept the pre-existing definitions that have been adopted by the courts and that are applicable in cases and has to respect the legislative choices in its language. If there's a belief that the statute should be broader or should have additional components to it, that's a legislative question, not a policy question to be decided upon in the courts. Mr. Spellberg, earlier when I was asking you about the Costa case, you had made a point that that involved the constitutional issue. And I guess I want to pursue that line with you a little further. Are you suggesting that a statement or a confession obtained by torture does not raise a constitutional issue? No, Your Honor. I'm saying that it can be both a constitutional claim and a claim under the statute for a statutory factual torture claim. This case demonstrates that. After Judge Flood dismissed the torture referral, Judge Flood immediately granted Ms. Gorman's motion for leave to file successive petition. In that petition, Mr. Muhammad raises not only all the claims regarding Brady and in other aspects of this case, but also all of the torture and involuntary statement claims. It is an additional form of relief, the Torture Act, not a replacement for it in any way. I want to ask you a question about a citation that Ms. Gorman has in her brief. She cites the Luna case where the Supreme Court talked about related enactments. And Ms. Gorman argues here that the General Assembly has made it a felony for a police officer to extract a statement through torture. It doesn't have to be a confession. It could be a statement. And so what she says, citing the Luna, is that looking at Turk and this statute that makes a felony for a police officer to extract a statement through torture, the more sensible way to view these two related enactments is that they reflect one spirit and single policy, which is to remedy torture in the criminal justice system, punish its culprits and banish its fruits. That's an argument that she's made. Could you respond to that? Your Honor, I don't think I disagree with what Ms. Gorman is saying, is that the legislature is trying to actively address the torture problem that has existed in Cook County and honestly, I believe, probably in other counties and even states. But they are trying to address it without question. And that statute, which has language broader than the Turk Act, is intended to encompass a broader scenario of actions by police officers. And it's also, the way I read it, it's not simply involving a defendant who's convicted. It may also, because it talks about information, it may be addressing torture of witnesses in that regard. And so the statute is broader in that regard. And that plain language of that statute shows that the legislature has the ability, has the know-how to be able to adapt a broader scenario when they want to and not limit it solely to confessions, which are used to obtain a conviction. So the petitioner's remedy here is with the legislature, not the court? I think the individual petitioners here, Mr. Muhammad's individual remedy is through the circuit court. I think if there is a concern among the court that the statute is too narrow as written, then the remedy for that would be in the legislature. Any other questions? So getting back to Bob Milan's appointment, you heard Ms. Gorman say that this is not prosecutor shopping, that the chronology of events is not as you argued. Would you like to respond to that? Your Honor, I believe what we say in our brief and what we said below is that this is an example of dissatisfaction with Mr. Milan's decision to proceed with defending the conviction. If you read the arguments below, you'll notice that one of the things that Mr. Milan had pointed out was that he is also the special prosecutor in the case, which is a different case, which was being handled by Ms. Gorman, a case involving, I think the name of the defendant is Donald Elam, appears, and it's in the record. And there's been no concern about his actions in that case, no objections to his role in that case. And so it's the timing here is very suspect because Ms. Gorman not only did seek Mr. Milan's appointment, she actively worked with him, arranged for him to meet through a Zoom interview with her client. And it was only after that, when Mr. Milan decided that the evidence was still supportive of the conviction, that is when she sought to rescind his appointment. Does this record counter Ms. Gorman's affidavit that she didn't know of Mr. Milan's role in the Is there any evidence in the record to counter Ms. Gorman's affidavit in which she aversed that she was not aware of Mr. Milan's prior role in the state's attorney's office? No, there's not. And I have no reason that I take her at her word. Okay, thank you. Mr. Spielberg, I've got a couple of questions for you. It's kind of, they're really easy questions, so you can just answer true or false, and we'll take your answers with their word. Isn't it correct, Mr. Spielberg, that Milan was the Bureau Chief of the Felony Division at the Cook County State's Attorney's Office at the time that Milano was allegedly tortured? Is that correct? No, Your Honor, that's actually not correct. It is a point of reference. At the time of this case being investigated, Bob Milan was the supervisor of the Felony Review Unit. He was not, he was not and never was the Chief of the Criminal Bureau. So, he was not Chief of the Felony Review Division? The title that we used was Supervisor of Felony Review. So, he was the Supervisor of Felony Review at the time that this alleged torture occurred, correct? Yes. Okay, just, okay. And I appreciate you clarifying for us. He was a supervisor, so he was really directly above them. So, not, there was no step between him and the state's attorneys that were involved. He supervised with, I believe, three deputy supervisors and a few what's known as trial supervisors. The Assistant State's Attorneys who were assigned to the Felony Review Unit, yes. I would add, however, though, that the torture allegations, just to clarify, involve solely Detectives Mitterand and Detective Fittick, neither of whom were allegedly torturing Mr. Muhammad in the presence of any Assistant State's Attorney. And so, at what point, I believe he was also a Bureau Chief, though, at the time that Muhammad was tried. Is that correct? No, Your Honor, that's not correct. Mr. Mylan, my recollection is that he was the Supervisor of the Felony Review Unit until around 2003, and then he was promoted to what was known as the Chief Deputy, which is one of the top assistants to then-Dick Devine, State's Attorney. And then he was promoted, I believe, in 2005 or so to the First Assistant. Right. So, he was Chief Deputy at the time that Muhammad was tried. Right. But now, it may be pedantic. I'm just trying to be clear. He was never the Chief of the Criminal Prosecution Bureau. Is it correct that there was nobody by that title, or is that just somebody? No, no, there is. Just a little bit of a the State's Attorney's Office is divided into numerous bureaus. There is the Criminal Prosecution Bureau, the Special Prosecution Bureau, the Civil Actions Bureau, the Juvenile Justice Bureau, and on and on. The Felony Review, like the Criminal Appeals Division, were part of the Criminal Prosecution Bureau. And he also supervised the ASAs whose conduct were that the Torture Commission specifically recommended for judicial examination. Is that correct? Your Honor, yes. He was the supervisor of the Felony Review. Yeah, that's fine. It's just a yes or no. I know you're trying to explain everything, and I do want you to explain if I'm saying something that's wrong, but if the answer is yes, you can just answer the question. Okay. And so, he was the first assistant at the time that McDermott was hired. He was second in command. Is that correct? I believe that's the case, yes, Your Honor. All right. And the cases against McDermott were filed before Muhammad's referral. Is that correct? I'm sorry. I'm not sure I understand the question, Your Honor. Okay. There was these complaints that started coming up against McDermott. And those cases against McDermott were long before Mylan ever got involved with this case. Is that correct? Yes. Yes. That's my understanding. All right. And I'll ask the question differently if you don't understand it. And so, the entire office recused based upon McDermott's employment at the office. Is that correct? I know that you gave a- I don't believe that's correct, Your Honor. No. I believe my understanding as to what occurred was that after the Turk referral in this manner is then that the state's attorney's office decided to recuse itself based upon McDermott's. But it's when you say the entire office, it means that the office has been recused. Well, just a second. Just a second. No, it doesn't. Because the state's attorney's office did recuse. So, no person currently employed with the state's attorney's office would have any involvement with this case. Is that correct? Yes, Your Honor. Yes. At that time, yes. Okay. And now, and Ms. Gorman talked about this earlier, but she requested that Milan provide her with some information regarding any conflicts of issues that there might be. And there was never a response to that. Do you know that that to be correct also? I do know that those allegations appear in the record. I don't know beyond that. Okay. Are you aware of a response? Was there ever- I was not working on this matter at the time. So, I do not know. So, the answer is you're not aware of a response, correct? Right. Okay. I just want to be clear. And I don't mind you having to rephrase the questions. I just want to be clear on what we're dealing with right here. Thank you so much, Mr. Spillman. Thank you. So, if there are no further questions, Your Honor, we would ask this court to affirm the decision by Judge Flood dismissing the Turk matter. Thank you. Thank you very much. Ms. Gorman? Thank you. Just briefly getting back to the confession issue, I just want to point out that Mr. Spellberg is talking about the word confession in the criminal context. And the Turk definition is talking about tortured confession in the context of the Torture-Turk Act. And so, I don't think that argument carries any weight about what- Well, and I think your argument, Ms. Gorman, is simply that a confession and a tortured confession would not be the same thing anyway. Correct. People confess to crimes all the time that are not tortured. But if someone confesses and they've been tortured, that's a whole different matter. That's your argument, correct? That's correct. Okay. I just want to be clear. Thank you. Thank you. I think there's no credible argument that the Torture Commission cannot define what a tortured confession is. And I also point out that there's no point in having the Turk conduct an investigation if that investigation can be ignored. I think those two are key issues that Judge Flug got wrong. Petitioner suggests to this court that we need a roadmap. I know this court knows that these cases have been coming up in some of the same issues and a lot of confusion. There's some confusion down below. I think we need a roadmap for litigants and judges in the Turk cases. I think we need to have a roadmap that emphasizes the Turk investigation looks at the totality of the evidence when weighing the evidence and determining credibility and deciding whether or not to make a referral. I think we need a roadmap that emphasizes that the Turk referral is prima facie evidence that the hearing if the court finds it is against the manifest weight of the evidence. And I think in that roadmap, we need to emphasize to the judges below that their job is not to determine if torture took place. The Turk already did that and it must be given prima facie evidence. The court's job is to figure out whether the outcome of the trial would have been different if the officers were impeached with their sordid past and the tortured confession was not used in that case. At the same time detectives were torturing Mr. Muhammad and concocting his confession, they and the prosecutors took steps to hide the torture and frame Mr. Muhammad. As I said before, they secured perjured testimony, they coerced witnesses, they secreted and destroyed documents. All of that information goes to the torture itself because it's underlying why they were torturing him to hide all of this stuff, come up with this confession and frame him. These facts are all evidence that flow from the torture and confirm the credibility of Mr. Muhammad's claim that he was tortured and also confirms the lack of credibility on the part of the state actors. Mr. Muhammad respectfully suggests that the hearing, if he is remanded below, that he be allowed to bring in all the malfeasance by the state, by the police, that corroborates Muhammad's torture and bears on the motive for them fabricating the confession. The alternative is to allow the history of detectives malfeasance in other cases but not to go into all of that malfeasance in his own case. And finally, again, I ask that the court not allow Mr. Miland perceived below if you remand the case. Thank you. Thank you very much to both of you. Excellent arguments. Appreciate your professionalism. Excellent briefs, giving us a lot to consider. We'll take this matter under advisement. Good afternoon. Good afternoon. Thank you so much.